UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA,

        - against -

                               **MEMORANDUM & ORDER**
JEFFREY BUSH,                          19-CR-378 (S-3) (PKC)

                Defendant.

--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Defendant Jeffrey Bush, a prisoner in federal custody and proceeding *pro se*, petitions for habeas relief under 28 U.S.C. § 2255 ("Section 2255").[1]   Arguing that his trial attorney was ineffective for not seeking to withdraw his guilty plea that was entered pursuant to Federal Rule of Criminal Procedure ("Rule") 11(c)(1)(B), Bush seeks to have his sentence reduced from 114 months to a sentence within the range of 70–87 months.  (Petition ("Pet."), Dkt. 539, at 5, 10; Reply in Supp. of Pet. ("Reply"), Dkt. 560, at 3–5.)  For the reasons stated below, Bush's Petition is denied.

## BACKGROUND

On February 7, 2023, Bush pled guilty to racketeering conspiracy before the Honorable Ramon E. Reyes, Magistrate Judge, pursuant to a plea agreement with the Government.[2]  (Min.

---

[1] Because Bush is proceeding *pro se*, the Court liberally construes his Petition and interprets it "to raise the strongest arguments that [it] suggest[s]."  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (italics and citation omitted).  But the Court "need not act as an advocate for *pro se* litigants."  *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998).

[2] As discussed in detail in the Government's opposition, Bush's agreement was the product of extensive plea negotiations between the parties, largely led by Bush's counsel who is the subject of this petition, Lisa Scolari.  (*See* Govt. Opp'n to Pet. ("Opp'n"), Dkt. 552, at 2–5.)

Entry dated 02/07/2023, Dkt. 407; J., Dkt. 514.)  At the plea proceeding, Bush's counsel, Lisa Scolari, and Bush himself confirmed that they had discussed the operation of the Sentencing Guidelines ("Guidelines").  (Plea Hr'g Tr. ("Plea Tr."), Dkt. 418, at 7, 15.)  In addition to discussing the sentencing process and the Guidelines, (*id*. at 15–18), Judge Reyes specifically advised Bush that his plea agreement contained a Guidelines estimate of 168 to 210 months and that Bush had "stipulated to that guideline calculation," (*id*. at 17).  Bush confirmed his understanding of this aspect of his plea agreement.  (*Id*.)  Judge Reyes also explained to Bush that his plea agreement specified that both parties "agreed to recommend to Judge Chen pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) that [he] be sentenced within that guideline calculation, 168 to 210 months," which Bush again confirmed that he understood.  (*Id*. at 17–18.)  Ms. Scolari also noted on the record that she had "explained to Mr. Bush that although we are making a joint recommendation, the judge is not bound by that recommendation.  And in addition, we can ask Judge Chen to consider anything under [18 U.S.C. § 3553(a)] that would be relevant, including *considering the potential correct imposition of the cocaine versus crack guidelines* and any other factor, such as the extremely harsh conditions that people at [Metropolitan Detention Center] have experienced while Mr. Bush has been there."  (*Id*. at 18 (emphasis added).)

The Court accepted Bush's guilty plea at a status conference held on March 30, 2023. (3/30/2023 Min. Entry.)  Before accepting the plea, the Court confirmed that Bush was knowingly entering into a Rule 11(c)(1)(B) guilty plea with a stipulated Guidelines range:

> THE COURT: The other thing I wanted to clarify with you, because you have a somewhat unique feature to your agreement, I shouldn't say unique, but it's slightly different than many plea agreements, you've agreed to what's called an 11(c)(1)(B) plea agreement.  Do you understand that?
>
> DEFENDANT BUSH: Yes.

THE COURT: Okay. Now your plea agreement in particular says that you've agreed, or you and the government have the [sic] agreed, to recommend to me that I sentence you within a guideline range of 168 to 210 months. Do you understand that?

DEFENDANT BUSH: Yes.

THE COURT: So you're bound by that agreement. You understand?

DEFENDANT BUSH: Yes.

THE COURT: Now the only reason I wanted to have you come back in here is because on page 18, again, at your plea transcript, which is dated February 7, 2023 -- yes, Ms. Scolari at lines 5 through 12 did explain, or seek to clarify, that she would still urge me to consider certain sentencing factors. And the only reason I wanted to see you again is to make sure you understand that even though Ms. Scolari certainly can, and I'm sure will do that at sentencing, you are still bound by recommending a sentence within the guidelines range. In other words, Ms. Scolari will argue all of these sentencing factors, but she cannot say to me so, therefore, you should give my client a sentence below the guideline range. Do you understand that?

DEFENDANT BUSH: Yes.

THE COURT: Okay. And even with that restriction on her ability to argue for a non-guideline sentence, do you still want to plead guilty?

DEFENDANT BUSH: May I talk to her?

THE COURT: Yes, take a moment. (Pause in the proceedings.)

THE COURT: Okay. So, Mr. Bush, do you understand that even though your lawyer will be free to argue certain sentencing factors, she will not be allowed to argue that I should give you a below guideline sentence. Do you understand that?

DEFENDANT BUSH: But the decision is basically up to you, right?

THE COURT: Correct.

DEFENDANT BUSH: All right, yes.

THE COURT: But do you understand that she cannot say to me, Judge, please give him a sentence below 168 months. Do you understand that?

DEFENDANT BUSH: Yes.

THE COURT: Okay.   And still you want to plead guilty, correct?

DEFENDANT BUSH: Yes.

THE COURT: All right.

(Status Conference Tr. ("SC Tr."), Dkt. 532, at 7–9.)

The parties appeared for sentencing on July 14, 2023.   (07/14/2023 Min. Entry.) Notwithstanding Bush's Rule 11(c)(1)(B) plea, Ms. Scolari strenuously argued, both in writing and before the Court, for a sentence well below the stipulated Guidelines range of 168–210 months. (Def.'s Sentencing Mem., Dkt. 504, at 3–4 (arguing that the Court should impose a sentence within a range of 63–78 months); Sentencing Tr. ("Sent. Tr."), Dkt. 524, at 34–38, 47–60.)  Ms. Scolari specifically argued that the Court should consider the EQUAL Act, a bill proposed in Congress that sought to eliminate the sentencing disparity between crack and powder cocaine.   (Def.'s Sentencing Mem., Dkt. 504, at 3; Sent. Tr., Dkt. 524, at 38–39[3], 55–59; *id.* at 54 (Solari arguing that "[t]he Government seems to be saying because we have a negotiated agreed-upon plea, the EQUAL Act doesn't apply here because of who he is").)[4]  The Court had applied the EQUAL Act, with the Government's agreement, as a mitigating factor in sentencing one of Bush's co-defendants.   (Def.'s Sentencing Mem., Dkt. 504, at 3.)

---

[3] The Court notes that on page 38 of the transcript, there is a mis-attribution of the Court's statements to Assistant United States Attorney ("AUSA") Nicholas Moscow.

[4] At the time of sentencing, the Justice Department had adopted a departmental policy encouraging prosecutors "to promote the equivalent treatment of crack and powder cocaine offenses," consistent with the pending EQUAL Act.  *See* Memorandum from the Att'y Gen. to All Fed. Prosecutors 4–5 (Dec. 16, 2022) (available at https://www.justice.gov/d9/2022-12/attorney_general_memorandum_-_additional_department_policies_regarding_charges_pleas_and_sentencing_in_drug_cases.pdf); *Ortiz v. Orange Cnty., New York*, No. 23-CV-2802 (VB), 2024 WL 113705, at *2 n.4 (S.D.N.Y. Jan. 10, 2024) (taking judicial notice of documents that are publicly accessible on official government sites).  Ultimately, the EQUAL Act was not enacted into law.  *See* EQUAL Act of 2021, H.R. Rep No. 117-28 (2021).

In the end, based on a number of factors, including the potential mitigating force of the EQUAL Act, the Court varied significantly downward from the stipulated Guidelines range of 168–210 months to impose a sentence of 114 months' incarceration.  (Sent. Tr., Dkt. 524, at 69–70, 75–76, 86–95 ("I have certainly taken note of the fact that there is a historical disparity between the treatment under the guidelines of crack offenses and powder cocaine offenses. . . . So, there's certainly some reason to think a sentence not quite as high as the guideline range is appropriate because the guideline range is predicated to a good degree on the operation of the current crack guidelines.").)

## LEGAL STANDARD

Section 2255 permits "[a] prisoner in custody under sentence of a [federal] court" to "move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  To obtain such habeas relief, the defendant must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'"  *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).

In general, a Section 2255 motion is not a substitute for a direct appeal.  *See generally United States v. Frady*, 456 U.S. 152, 164–66 (1982) ("[A] collateral challenge may not do service for an appeal.").  Thus, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a Section 2255 motion] only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'"  *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted); *see also Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992) ("It is generally accepted that a procedural default of even a constitutional issue will bar review under [Section] 2255, unless the defendant can meet the 'cause and prejudice' test." (collecting cases)).  But "an ineffective-assistance-of-counsel claim

5

may be brought in a collateral proceeding under [Section] 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

## DISCUSSION

### I.    Defendant Cannot Show Ineffective Assistance of Counsel

Defendant asserts that his counsel was ineffective because she failed to withdraw his guilty plea upon hearing his concerns about the stipulated-to Guidelines range and instead reassured him that his plea would not stop him from receiving the cocaine Guidelines.  (*See* Pet., Dkt. 539, at 5; *see also* Ex. A, Dkt. 539 (documenting Defendant's concern about his Rule 11(c)(1)(B) plea and counsel's response that the plea "will not stop [him] from getting the coke guidelines and [that] the judge will apply the coke guidelines").)  Defendant contends that, if he declined the deal and went to trial, he would have received a lower sentence due to the imposition of the "powder guidelines."  (*See* Pet., Dkt. 539, at 5.)

### A.    Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Terry Williams v. Taylor*, 529 U.S. 362, 390 (2000) (affirming that ineffective assistance of counsel claims "are squarely governed" by *Strickland*); *see also Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (applying *Strickland* to ineffective assistance of counsel claims).  Under that two-pronged test, a defendant must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.  The defendant bears the burden of showing deficiency and prejudice. *Weaver v. Massachusetts*, 582 U.S. 286, 299 (2017).

The "deficiency" prong of *Strickland* requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688. This standard of reasonableness encompasses a "wide range of professionally competent

6

assistance," *id.* at 690, and requires the court to "indulge a strong presumption that counsel's conduct falls within [that] wide range," *id.* at 689. In fact, a counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690–91; *see also Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) ("We will not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a 'significant potential downside.'" (quoting *Sacco v. Cooksey*, 214 F.3d 270, 275 (2d Cir. 2000))). There are, however, no bright line or mechanical rules to determine what constitutes a deficient performance. Given the "countless ways to provide effective assistance in any given case," a court evaluating an ineffectiveness claim "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689–90. "[T]he court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* at 690. A defendant cannot establish ineffective assistance where he "instructed his counsel to pursue a course of action that [he] now complains [of]." *United States v. Wellington*, 417 F.3d 284, 289 (2d Cir. 2005) (citing *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000)).

The "prejudice" prong of *Strickland* requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This standard does *not* require the defendant to show that counsel's deficient performance "more likely than not altered the outcome of the case." *Id.* at 693. But at the same time, merely showing that counsel's errors "had some conceivable effect on the outcome of the proceeding" is insufficient. *See id.*; *see also Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) ("The level of prejudice the defendant need demonstrate

lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" (quoting *Strickland*, 466 U.S. at 693)).  Like the deficiency prong, the prejudice prong is ultimately concerned with the reliability and fairness of the proceeding, which can be undermined even if the defendant cannot show by a preponderance of the evidence that counsel's errors were outcome-determinative.  *See Strickland*, 466 U.S. at 694. Accordingly, a "reasonable probability" of prejudice under *Strickland*'s second prong "is a probability sufficient to undermine confidence in the outcome." *Id.*

Where, as here, a defendant asserts his counsel's performance affected the outcome of the plea process, the defendant must establish the prejudice requirement by showing that there "is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Premo v. Moore*, 562 U.S. 115, 129 (2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Roy v. United States*, 347 F. Supp. 3d 230, 237 (S.D.N.Y. 2018).  "[T]his inquiry requires a fact-specific analysis that evaluates the weight of the evidence, the consequences of various legal options, and any circumstances that may affect a decision to enter a plea.  *Francis v. United States*, No. 12-CV-1362 (AJN), 2013 WL 673868, at *3 (S.D.N.Y. Feb. 25, 2013); *see also Premo*, 562 U.S. 130–32 (determining that a petitioner failed to show prejudice in part because the evidence against him was strong).  Such circumstances include, for example, whether a petitioner "would have been acquitted or at least received a shorter sentence after conviction." *United States v. Peterson*, No. 18-CR-609 (HG), 2025 WL 1713122, at *4 (E.D.N.Y. June 19, 2025) (quoting *Moore v. United States*, No. 16-CR-167 (LAP), 2022 WL 2306910, at *3 (S.D.N.Y. June 27, 2022)); *Goyal v. United States*, No. 19-CR-844 (CS), 2025 WL 307236, at *3 (S.D.N.Y. Jan. 27, 2025) (quoting *Hill*, 474 U.S. at 59)); *see Antoine v. Ercole*, No. 11-CV-0088 (PKC), 2013 WL 4647497, at *16 (E.D.N.Y. Aug. 29, 2013).

The court may reject an ineffective assistance claim if the defendant fails to prove either *Strickland* prong. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one."). The court therefore need not consider the prejudice prong if a defendant fails to demonstrate that his counsel's performance was objectively unreasonable. *See United States v. Vegas*, 27 F.3d 773, 778 (2d Cir. 1994). At the same time, the court may consider the prejudice prong first if it is "easier to dispose of [the defendant's] ineffectiveness claim." *Strickland*, 466 U.S. at 697; *Hill*, 474 U.S. at 60 (declining to determine "whether there may be circumstances under which erroneous advice by counsel . . . may be deemed constitutionally ineffective assistance of counsel" because the petitioner did not satisfy the prejudice prong); *see also Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (declining to consider the deficiency prong because the defendant "was not prejudiced" by his attorney's conduct).

## B. Bush Has Not Established Prejudice

To resolve Defendant's habeas claim, the Court need only consider the second prong of *Strickland*: whether Bush has shown a "reasonable probability" of prejudice, i.e., that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[5] Bush argues, in effect, that had Ms. Scolari (successfully) moved to

---

[5] The Court notes that, were it to consider the first prong, it would find that Bush also has failed to establish that it was ineffective assistance for Ms. Scolari not to seek withdrawal of his guilty plea. In characterizing the failure to seek to withdraw Bush's guilty plea as a "decision," the Court accepts Bush's representation that "[o]n July 14, 2023," the day of Bush's sentencing, after "receiv[ing] the government sentencing memo and recommendation," he told Ms. Scolari that he "wanted to . . . pull the plea deal[,]" but that "Ms. Scolari convinced Bush once again he will get the powder guidelines which was now 70–87 months." (Reply, Dkt. 560, at 3.) However, as the Government argues, there was no "fair and just reason" to move for withdrawal and thus Ms. Scolari's decision not to do so, "when there was no lawful basis for the Court to grant such a motion, was . . . not constitutionally defective." (Opp'n, Dkt. 552, at 8–9; *see also* Plea Tr., Dkt.

withdraw Bush's guilty plea, his Guidelines range would have been 70–87 months and he would have received a sentence of less than 114 months—even if he was "to lose . . . every count at tr[ia]l." (*See* Pet., Dkt. 539, at 5; Reply, Dkt. 560, at 4–6.)  The Court disagrees.

Although Defendant claims that, but for his counsel's poor performance, he would have pursued his right to trial, (*see* Reply, Dkt. 560, at 4), this assertion is insufficient to establish prejudice under *Strickland*, *see Boakye v. United States*, No. 09-CV-8217, 2010 WL 1645055, at *6 (S.D.N.Y. Apr. 22, 2010).  As the Government convincingly argues, had Bush successfully withdrawn his guilty plea and gone to trial, he would "almost certainly have been convicted of a drug conspiracy, possession of a firearm during and in furtherance of a conspiracy, and conspiracy to commit assault in aid-of racketeering." (*See* Govt. Opp'n, Dkt. 552, at 9–10 (describing substantial evidence of Bush's involvement in the charged racketeering conspiracy, including cooperator testimony, documentary and social media evidence, "extremely high-quality video" showing Bush engaging in a drug transaction, and "strong witness testimony" as to Bush's possession of guns and his orchestration of a "violent gang assault")); *Antoine*, 2013 WL 4647497, at *16 (E.D.N.Y. Aug. 29, 2013) (determining defendant could not demonstrate prejudice because "the evidence against him was strong, if not overwhelming" if he proceeded to trial); *Sica v. United States*, No. 14-CR-462 (CS), 2019 WL 6341300, at *5 (S.D.N.Y. Nov. 26, 2019) (concluding petitioner failed to show prejudice because if he rejected the plea, "the odds of the Government failing to prove that his drugs were a but-for cause of any one of the three deaths were slim").  As a result, Defendant would have faced a higher Guidelines range than the one stipulated to in his

---

418, at 17–18 (Bush confirming that he was knowingly and voluntarily entering into the Rule 11(c)(1)(B) plea agreement; SC Tr., Dkt. 532, at 3 (same).)

Rule 11(c)(1)(B) plea agreement.[6]  (*See* Govt. Opp'n, Dkt. 552, at 9–10 (calculating a Guidelines range of at least 135–168 months, plus a mandatory minimum consecutive sentence of 60 months, for a total of 195–228 months, if Bush were convicted at trial of the offenses charged in the superseding indictment)); *Fifield v. Hunt*, No. 06-CV-6235 (MAT), 2009 WL 4730322, at *5 (W.D.N.Y. Dec. 4, 2009) ("Petitioner cannot show prejudice because Petitioner received a more favorable sentence than if he had proceeded to trial and been convicted on the charges in the indictment."); *Peterson*, 2025 WL 1713122, at *1, *4 (concluding a petitioner could not show prejudice because, had he gone to trial, he was likely to be convicted and face a mandatory life sentence, compared to the 192-month sentence he received through his plea).

"'[P]urely speculative' arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, No. 08-CR-523 (CM), 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (quoting *United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991)).  Here, Defendant offers no persuasive arguments to show that he would have received a lower sentence if he had proceeded to trial.  Rather, given the benefits that he received by pleading guilty, including the dismissal of other counts in the indictment,[7] the "conservative estimate" of the amount of crack Bush sold used

---

[6] The Court is unpersuaded by Defendant's assertion that, had he proceeded to trial, he would have received a lower Guidelines sentence because, according "to the AG Memo, the government would have had to change the 280 grams of cocaine base in to [sic] the powered guidelines."  (Reply, Dkt. 560, at 5.)  The AG Memo explicitly stated it was solely providing guidance, and was not "intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States."  AG Memo, *supra* note 4, at 5 n.4.  Moreover, even if the Court took the EQUAL Act into account after trial, Bush's sentence would not have been lower than 114 months because Bush would have started with a higher Guidelines range than the stipulated-to range of 168–210 months.

[7] Bush was also charged with conspiracy to commit assault in aid of racketeering, conspiracy to possess with intent to distribute controlled substances, possession with intent to distribute cocaine, and unlawful use of a firearm.  (*See* Superseding Indictment (S-3), Dkt. 170; 07/14/2023 Min. Entry (dismissing these charges).)

to calculate his sentence,[8] the three-level reduction for acceptance of responsibility,[9] and the fact that Ms. Scolari vigorously advocated for a below-Guidelines sentence despite the stipulated-to range, Defendant cannot show prejudice from his attorney's decision not to seek to withdraw his Rule 11(c)(1)(B) guilty plea. *United States v. Vargas*, No. 07-CR-1099-01 (NRB), 2014 WL 6850978, at *4 (S.D.N.Y. Dec. 3, 2014) (rejecting ineffective assistance of counsel claim where "defense counsel successfully advocated for a sentence of the mandatory minimum term of incarceration, which was substantially lower than the Guidelines sentencing range to which Vargas had stipulated in his plea agreement"); *United States v. Edwards*, 214 F. App'x 57, 61 (2d Cir. 2007) (summary order) (declining to find prejudice where "a number of factors strongly indicate that [petitioner] would not lightly have foregone the government's plea deal," including three-level reduction of acceptance of responsibility); *Morrison v. United States*, No. 07-CR-3 (LAP), 2021 WL 1635852, at *4 (S.D.N.Y. Apr. 26, 2021) (finding no prejudice where, "as a result of his plea, Petitioner received a reduced sentencing guidelines range and had some of the charges against him dismissed, all of which would have been unavailable had he proceeded to trial").

## CONCLUSION

Bush's petition for habeas relief under 28 U.S.C. § 2255 is denied. A certificate of appealability shall not issue because the Court does not find that reasonable jurists could debate that the motion "should have been resolved in a different manner" or that it presents issues "adequate to deserve encouragement to proceed further." *See Miller-El v. Cockrell*, 537 U.S. 322,

---

[8] (*See* Sent. Tr., Dkt. 524, at 63 (explaining that the Court would not give much weight to the potential guidelines calculated under the EQUAL Act given that, based on "all of the evidence in the case," the 280 grams of crack cocaine attributed to Bush at sentencing was "a gross underestimate of the amount of crack that Mr. Bush [had] sold over the course of his time").)

[9] (*See* Pet., Dkt. 539, at 5.)

336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also* 28 U.S.C. § 2253(c)

("A certificate of appealability may issue . . . only if the applicant has made a substantial showing

of the denial of a constitutional right.").

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 2, 2026
Brooklyn, New York